**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAFIC FLETCHER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-3777** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**GALLAGHER, J.** **August 4, 2026**

Plaintiff Shafic Fletcher, who is currently incarcerated at SCI Mahanoy, filed this civil action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of the conditions in which he was previously held within the Philadelphia Department of Prisons ("PDP"). He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Fletcher leave to proceed *in forma pauperis* and dismiss his Amended Complaint without prejudice to amendment.

## I. FACTUAL ALLEGATIONS

Fletcher's Amended Complaint brings constitutional claims against the City of Philadelphia and PDP related to his prior incarceration within the City's correctional facilities.[1]

[1] Fletcher initiated this civil action by filing a letter with the Court dated May 22, 2026, claiming that he did not receive adequate care for his wrist while incarcerated within PDP in July 2023, which the Clerk's Office treated as a Complaint and docketed in accordance with Federal Rule of Civil Procedure 5. (*See* ECF No. 1.) The Court issued an Order on June 9, 2026, informing Fletcher that, to proceed on any claims, he would be obligated to file a proper complaint describing the factual basis for his claims against identified defendants in accordance with the Federal Rules of Civil Procedure, and to either pay the fees or seek leave to proceed *in forma pauperis*. (ECF No. 3.) Fletcher responded by filing a Motion to Proceed *In Forma Pauperis* and a Motion for Appointment of Counsel. (ECF Nos. 4, 5.) In an Order dated July 20, 2026, the Court denied Fletcher's Motions and directed him that, to proceed with his lawsuit, he would have to file a proper complaint and prison account statement in accordance with the Court's

(ECF No. 7 at 1-2; ECF No. 10 at 1-2; ECF No. 14 at 1-3.) The events giving rise to Fletcher's claims began in July 2023 at the Philadelphia Detention Center, when a "fist fight broke out" between him and two other inmates. (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) He alleges that he was "punched with [a] fist, and thrown to the floor and kicked repeatedly." (ECF No. 10 at 1; *see also* ECF No. 14 at 12.)

Fletcher alleges that "[g]uards failed to respond" when the fight first broke out so, "[f]inally, [he] called aloud for guards to help." (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) Guard Blair apparently responded and "used excessive force against" Fletcher by twisting his wrist repeatedly, even though Fletcher claims that he was "not acting disruptively or resisting arrest." (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) Fletcher was handcuffed and "placed in the isolation unit without medical attention." (ECF No. 10 at 1 (cleaned up); *see also* ECF No. 14 at 12.) It appears his wrist was fractured. Over several months, Fletcher "submitted several sick calls, and reported chronic pain to staff and prison officials," but alleges his "care was constitutionally inadequate." (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) For instance, he alleges that he was not provided x-rays or given pain medication. (ECF No. 10 at 2.)

---

earlier Order. (ECF No. 6.) That Order appears to have crossed in the mail with Fletcher's most recent filings—three Motions to Proceed *In Forma Pauperis*, three Prison Account Statements, and three Amended Complaints. (ECF Nos. 7-15.) An amended complaint, once filed, becomes the governing pleading that dictates the contours of the plaintiff's claims. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). Here, Fletcher filed three "Amended Complaints" at approximately the same time, which contain essentially the same subject matter. (ECF Nos. 7, 10, 14.). The Court will consider these documents together to comprise the Amended Complaint in this case because it is apparent that Fletcher filed them at approximately the same time and intended them to be read together. The Court adopts the pagination supplied to Fletcher's filings by the CM/ECF docketing system.

Fletcher was released from incarceration in February 2024. (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) In March 2024, he had surgery for a fractured right wrist at Penn Presbyterian Hospital. (ECF No. 10 at 1, 2; *see also* ECF No. 14 at 12.) In June 2024, Fletcher was reincarcerated in the Philadelphia Prison System with a cast on his right wrist.[2] (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) He alleges that he was not transported to the hospital for follow-up appointments, that his wrist did not heal properly, and that sick call slips and grievances he filed were delayed and/or ignored. (ECF No. 10 at 1; *see also* ECF No. 14 at 12.) A second surgery was performed on Fletcher's hand in June 2025. (ECF No. 10 at 1.) However, at this point, his bone cannot heal properly and he has sustained permanent damage including chronic pain and arthritis. (*Id.*)

Fletcher claims that his constitutional rights were violated by Guard Blair's use of force and by the delay and denial of medical care for his wrist. (ECF No. 7 at 5; ECF No. 10 at 1-2.) He claims that he was not provided treatment for "more than eight months." (ECF No. 14 at 13.) Fletcher seeks damages, as well as declaratory and injunctive relief.[3] (ECF No. 10 at 3.)

---

[2] This allegation corresponds with publicly available records showing that Fletcher was arrested on June 19, 2024, for offenses he allegedly committed the previous day. *See Commonwealth v. Fletcher*, No. MC-51-CR-0011603-2024 (Phila. Muni. Ct.). He pled guilty and was sentenced on November 5, 2025, to five to ten years of "state incarceration" among other things. *Commonwealth v. Fletcher*, No. CP-51-CR-0008561-2024 (Phila. C.P.). The docket reflects that Fletcher has been at SCI Mahanoy, where he is currently incarcerated, since January 13, 2026. *Id.*

[3] Since Fletcher is no longer incarcerated within PDP, any claims for prospective declaratory and injunctive relief are moot. *See, e.g.*, *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (quoting *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)). Further, declaratory relief is not available as to past conduct. *See, e.g.*, *Bond v. DiClaudio*, No. 22-3010, 2023 WL 1990532, at *1 (3d Cir. Feb. 14, 2023) (*per curiam*) ("The District Court also properly concluded that the declaratory relief that Bond requested, for conduct that occurred in the past, is not available.").

## II. STANDARD OF REVIEW

The Court will grant Fletcher leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Fletcher's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Fletcher is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Additionally, dismissal of a complaint based on the statute of limitations is appropriate at the pleading stage provided the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

## III. DISCUSSION

Fletcher's brings constitutional claims pursuant to § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

---

[4] Because Fletcher is a prisoner, he still must pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Fletcher did not name the prison official who used force against him or the officials who denied him care as defendants in this case. Instead, he only named PDP and the City of Philadelphia as Defendants. However, PDP "is not legal entity but instead is a department of the City of Philadelphia," meaning it is not separately suable from the City itself, and is not a "person" for purposes § 1983. *Burgos v. Phila. Prison System*, 760 F. Supp. 2d 502, 503 n.1 (E.D. Pa. 2011); *see also* 53 Pa. Cons. Stat. Ann. § 16257. Accordingly, the Court will dismiss PDP as a Defendant in this case and construe all of Fletcher's claims as having been raised against the City of Philadelphia, the other named Defendant in this case.

To proceed against a municipal entity such as the City of Philadelphia under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), by specifically stating "what exactly that custom or policy was," *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).[5] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by

[5] Although Fletcher did not name any individuals as Defendants, he should note that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)).

law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). A plaintiff may also proceed against a municipal entity by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[6] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is

---

[6] The United States Court of Appeals for the Third Circuit generally employs a "deliberate indifference" framework for medical needs claims regardless of whether the plaintiff is a pretrial detainee or a convicted and sentenced prisoner. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023) ("Because the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment, we will review Sherelle Thomas's claims for failure to render medical care under the Fourteenth Amendment by applying the same standard used to evaluate claims brought under the Eighth Amendment."); *Dates v. Winters*, No. 22-2253, 2022 WL 17958626, at *2 n.3 (3d Cir. Dec. 27, 2022) (*per curiam*) ("We have found no reason in previous cases, however, to analyze pretrial detainees' claims of inadequate medical care under something other than the deliberate indifference standard."); *Parker v. Butler County*, 832 F. App'x 777, 780 n.1 (3d Cir. 2020) (*per curiam*) (noting in the context of a medical needs claim, that "[i]t appears that Parker was a pre-trial detainee during the relevant time periods in his complaint. While that affects the source of his constitutional right, it does not dramatically affect the substance of our analysis here."); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (employing deliberate indifference standard when assessing medical needs claims brought by immigration detainees); *Edwards v. Northampton County*, 663 F. App' x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). *But see Moy v. DeParlos*, No. 22-1723, 2023 WL 3717517, at *1 (3d Cir. May 30, 2023) (*per curiam*) (questioning, without deciding, whether an "objective-only inquiry" applies to detainee's claims). Regardless, Fletcher's claims fail for lack of specificity regardless of any nuance in the standard.

not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas*, 88 F.4th at 281 (cleaned up).

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). This standard is met when a delay or denial of medically necessary care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Inadequate care may nevertheless give rise to a deliberate indifference claim when a defendant "act[s] with the requisite state of mind when providing that inadequate care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017); *see also Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) ("[P]rison officials

may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition" (quotations and citations omitted)).

Fletcher generally alleges that he did not receive adequate medical care for his wrist over a period of over eight months following his injury and then, for post-surgical care when he was reincarcerated in June 2024. However, his allegations are not specific. He alleges that he submitted sick call slips and wrote grievances that were ignored, but he does not provide facts addressing whom he spoke to about his medical needs, describing the content of those conversations, explaining the condition of his wrist at these times, or detailing the course of medical care, including what, if anything medical personnel told him or prescribed to him or how they otherwise responded to him. As noted above, to proceed Fletcher must alleged facts suggesting prison officials or medical personnel knew of a need for treatment but did not provide that treatment or denied him treatment for a non-medical reason and that, under the circumstances, they essentially ignored a serious risk to his health, *i.e.*, the permanent injury to his wrist. Generalized allegations that unspecified requests for care at unspecified times were ignored fall short of doing so. *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Muhammad v. NJ. State Prison*, No. 25-2073, 2025 WL 3002062, at *1 (3d Cir. Oct. 27, 2025) (*per curiam*) (affirming dismissal of deliberate indifference claim where plaintiff "complained that his medical care was denied and delayed for a non-medical reason; however, he did not develop those allegations in any way"); *Folk v. Prime Care Med.*, 741 F. App'x 47, 52 (3d Cir. 2018) (*per curiam*) (agreeing

with appropriateness of dismissal of deliberate indifference claims that "contain[ed] no facts, only [plaintiff's] conclusions about the appropriateness of unidentified actions at unknown times"). Fletcher's vague allegations not only fail to plead deliberate indifference to a serious medical need, but they are also insufficient at this time to establish a policy or custom attributable to the City that led to the alleged harm in this case.

As to Fletcher's excessive force claim—as well as any other claims potentially arising from the response, or lack thereof, to the July 2023 fist fight—it is apparent from the face of the Amended Complaint that such claims are time barred. Pennsylvania's two-year statute of limitations applies to these claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). A prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing."). Additionally, an inmate is entitled to tolling while he exhausts administrative remedies as required by the Prison Litigation Reform Act. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

Fletcher's excessive force claims accrued in July 2023, because that is when the fight occurred and when Guard Blair allegedly subjected him to excessive force by twisting his wrist. It follows that Fletcher knew or should have known of his injuries on this date. *See LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) ("Claims for false arrest and assault (which would include LeBlanc's excessive force claim) typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury."); *see also Hickox v. County of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (*per curiam*) ("Hickox's cause of action accrued on November 13, 2010, the date on which he alleges he was injured by the defendants' actions."). However, he did not raise these claims until three years later; a year beyond when the statute of limitations expired.[7] Although Fletcher would be entitled to tolling while exhausting grievances, if he filed a timely grievance about excessive force (which is unclear) and it was ignored or delayed as he claims his grievances were, he would have had had the ability to pursue his claim at that time. *See Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) (explaining that "[w]henever a prison fails to abide by [its own] procedural rules, its administrative remedies have become unavailable, and inmates are deemed to have successfully exhausted their remedies for purposes of the PLRA"); *id.* at 359 ("Shifflett exhausted his remedies and acquired the right to come into federal court when the prison did not decide the initial appeal of his grievances within the time limits specified by the grievance policy."). It is also worth noting that he was released for a period of a few months in 2024, and that he has been incarcerated at SCI Mahanoy since January 2026. That he was no longer in custody of the PDP during these times undermines applicability of tolling for PLRA exhaustion. *See generally*

[7] To the extent Fletcher's initial letter could be considered a Complaint (*see* ECF No. 1), it does not raise the issue of excessive force or discuss the fist fight. Rather, these allegations first appeared in Fletcher's Amended Complaints.

*Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002) (observing that a plaintiff need not exhaust administrative remedies under the PLRA once released); *see also Bradley v. Washington*, 441 F. Supp. 2d 97, 103 (D.D.C. 2006) (concluding that inmate's transfer to federal custody rendered administrative remedies at local jail unavailable). Under the circumstances here, it is apparent from the face of the Amended Complaints that Fletcher's excessive force claim and any claims related to the fight are time barred and that there are no meritorious tolling issues. *Okey v. Eshbach*, No. 26-1269, 2026 WL 1453169, at *1 (3d Cir. May 22, 2026) (*per curiam*) ("A court may sua sponte dismiss an untimely complaint if 'it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue.'" (quoting *Vazquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009))).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Fletcher leave to proceed *in forma pauperis* and dismiss his Amended Complaint. His claims against the PDP and his claims for excessive force as well as any other claims based on the 2023 fist fight will be dismissed with prejudice because he cannot cure the defects in those claims. However, Fletcher will be given leave to file one comprehensive second amended complaint in the event he can state a timely, plausible claim against an appropriate defendant based on the alleged deliberate indifference to his medical needs. An order follows, which provides further instruction as to amendment.

**BY THE COURT:**

***/s/ John M. Gallagher***

**JOHN M. GALLAGHER, J.**